UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT ALLEN McLEMORE,

    Plaintiff,

v.                                              Case No. 6:10-cv-766-Orl-28KRS

SAMUEL CRUZ, et al.,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

On May 17, 2008, Robert Allen McLemore was an inmate at the Orange County Jail ("Jail"), where Defendants Samuel Cruz, Luis Escobales, Erick Mejia, and Mark Caruso worked as correctional officers. McLemore has sued these correctional officers pursuant to 42 U.S.C. § 1983, claiming that Cruz used constitutionally excessive force against him by slamming him onto the Jail floor and that the other Defendants failed to intervene. Defendants have filed motions for summary judgment (Doc. Nos. 142 & 143), asserting that McLemore failed to exhaust his administrative remedies under 42 U.S.C. § 1997e(a) and that they are entitled to qualified immunity.[1]

As set forth below, McLemore has presented evidence of a good cause basis for failing to timely file an administrative grievance, but all of the Defendants except Cruz have qualified immunity. The motions for summary judgment therefore must be granted as to Defendants Escobales, Mejia, and Caruso but must be denied as to Cruz.

---

[1] In accordance with *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), McLemore was given notice of his right to respond to the motions and did so. *See* Docs. Nos. 155 & 156.

I.    *Legal Standards*

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–324. If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1992).

One issue in this case is whether McLemore timely exhausted his administrative remedies before filing this action. Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before pursuing a civil rights action:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court of the United States has held that § 1997e requires "'proper exhaustion,'" such that "a prisoner must exhaust all prescribed administrative remedies available to him . . . before filing a lawsuit to seek judicial redress." *Garcia v. Glover*, 197 F. App'x 866, 868 (11th Cir. 2006) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). The Supreme Court has repeatedly held that "[t]here is no question that exhaustion is mandatory under the [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). In determining whether a plaintiff has exhausted his administrative remedies, courts do "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998)).

II.     *Factual and Procedural Background*[2]

McLemore asserts that on May 17, 2008, while he was an inmate at the Jail, Cruz ordered him and his cellmate to report to the dayroom. Third Am. Compl. at 8. McLemore and his cellmate had been arguing earlier in the evening, and, according to McLemore, Cruz and Escobales routinely staged fights between prisoners to settle their differences.

---

[2]The facts are taken largely from McLemore's verified Third Amended Complaint (Doc. No. 16) and deposition (Doc. No. 143). Because McLemore is the non-moving party, the facts and reasonable inferences therefrom are construed in his favor at this stage of the case.

*Id.* at 10. The fights were refereed by Cruz and wagered upon by all of the Defendants. *Id.* McLemore described the staged fights as a "fight-club." *Id.* at 9.

Upon their arrival at the dayroom, Cruz ordered McLemore and his cellmate "to fight each other for a period of three (3) minutes." *Id.* at 8. Cruz told McLemore that if he refused to fight, "I'll say you swung on me, and I'll charge you with battery on a correctional officer." *Id.* at 10. Responding to the threats, the two inmates began wrestling with each other, but, because of their lack of aggression, Cruz began directing profanities at them. *Id.* at 11. Eventually, Cruz ordered them to stop and to return to their cell. *Id.*

As McLemore was on his way back to his cell, Cruz grabbed McLemore and "slammed" him to the floor, causing his head to "hit the hard plastic arm of a row of seats." *Id.* at 12. McLemore claims that the other Defendants were present when this happened, but they failed to intervene or otherwise protect him, report the matter to the Jail supervisors, or seek medical assistance for him. *Id.*

McLemore did not report the incident at the time either, nor did he request any medical attention. McLemore Dep. at 66, 108. However, a few days after the incident, a Crisis Response Team came into the unit where McLemore was housed and performed a "shakedown" for weapons. *Id.* at 33. During the shakedown, McLemore developed chest pain, shortness of breath, and nausea; he was admitted into Orlando Regional Medical Center ("the hospital") on May 22, 2008. *Id.*

During his hospital stay, investigators from the Jail interviewed McLemore regarding the "fight-club." Third Am. Compl. at 13-14. McLemore spoke to Investigator

Reeves on May 23, 2008, and a day or two after that, he spoke to Investigator Bynes. McLemore Dep. At 82, 122. McLemore asked Reeves for the form to initiate the grievance procedure regarding the Cruz incident, but Reeves told him that he would have to wait until he returned to the jail. *Id.* at 82. Additionally, when McLemore spoke to Bynes at the hospital, Bynes told him that filing a grievance would hinder her ongoing investigation but that if he contacted her when he returned to the Jail, she would provide him with a grievance form at that time. *Id.* at 83.

McLemore was discharged from the hospital on June 1, 2008, and he spent one day in the Jail medical wing before being transferred to the Florida Department of Corrections. *Id.* at 80. McLemore requested the form from Investigator Bynes while he was at the Jail, but she did not provide him with the form. Third Am. Compl. at 16; McLemore Dep. at 84. McLemore ultimately completed a grievance form about the incident one year later, and it was denied as untimely. McLemore Dep. at 76-77.

McLemore filed this lawsuit in May 2010. In the Third Amended Complaint, McLemore alleges that his constitutional rights were violated by Cruz's attack, by a conspiracy among the Defendants in operating the "fight-club," and by his forced participation in the fight club. He claims that he sustained permanent physical and emotional injuries that will disable him for life, and he seeks compensatory and punitive damages.

Earlier in these proceedings, the Defendants filed motions to dismiss. *See* Doc. Nos. 66 & 70. Cruz's motion to dismiss was denied, and the Court also denied all of the

Defendants' motions to dismiss with regard to administrative exhaustion, finding that McLemore had sufficiently alleged that Jail officials had prevented or thwarted his efforts to pursue his administrative remedies. *See* Order, Doc. No. 97. The motions to dismiss by Defendants Escobales, Mejia, and Caruso were granted with regard to the conspiracy claims, but the remaining claims surrounding the assault by Cruz and McLemore's forced participation in the fight club survived the motions to dismiss. Defendants now move for summary judgment, again asserting failure to exhaust administrative remedies and also arguing that they are entitled to qualified immunity on McLemore's remaining claims.

*III.    Discussion*

*A.    Administrative Exhaustion*

It is undisputed that under the Jail's grievance procedures, McLemore had ten days from the date of the incident to file a grievance. It is also undisputed that McLemore failed to file the grievance within the required time, but McLemore contends that there was good cause for his failure to do so. He explains that he did not file a grievance during the five days between the incident and his hospital admission because he "didn't feel safe" doing so, asserting that he would have been required to give the form either to Cruz or to the officer who relieved Cruz. McLemore Dep. at 69. He also maintains that his efforts to submit a grievance after his hospital admission were thwarted by failure of the investigators to provide him with the form.

McLemore's non-specific claims of fear during the five days immediately after the incident do not constitute good cause excusing his failure to timely initiate and exhaust

6

available administrative remedies. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004). Likewise, the fact that McLemore was in the hospital, in and of itself and without a showing of good cause, provides no justification for his failure to timely exhaust his administrative remedies. *Isaac v. Donald*, 211 F. App'x 859 (11th Cir. 2006). However, the alleged failure of Jail personnel to provide him with the grievance form would, if proved, constitute good cause.

McLemore chose to file the form during the ten-day period, and according to his unrebutted account, he thereafter did all that he could do to try to obtain and file the form. McLemore Dep at 82-84. When he arrived at the hospital, there were five days remaining to timely file a grievance regarding Cruz's attack. When Reeves came to the hospital a day or so after McLemore's admission, McLemore asked Reeves for the grievance form so that he could initiate the grievance procedure, but Reeves told him to wait until he returned to the Jail. Additionally, McLemore claims that Investigator Bynes assured him she would provide him with the form when he got back to the Jail, but she did not do so.

In sum, the record evidence reflects that McLemore's requests for the grievance form at the hospital were deferred by both Bynes and Reeves, and his request once he returned to the Jail from the hospital—after the ten-day period had already expired—received no response. Thus, it does not appear on this record that McLemore could have done any more than he did once he decided to initiate the grievance procedure. *See Brock v. Kenton*

7

*Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004).³ Accordingly, Defendants' requests for summary judgment on the basis of lack of administrative exhaustion are denied.⁴

B.    *Qualified Immunity*

Qualified immunity shields law enforcement officers performing discretionary functions from suit in their individual capacities so long as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable officer would have known. *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009). The qualified immunity analysis consists of three prongs. First, the officer must prove that he was acting within the scope of his discretionary authority when the alleged unconstitutional act took place. *Id*. If the officer satisfies the first prong, the burden shifts to the plaintiff to prove both that the officer violated the plaintiff's constitutional rights and that the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Id*.⁵

---

³The Court is aware that "[e]xplanations for the delay that are not first proffered by the prisoner to the administrative body appropriately are not to be considered in a section 1983 suit." *Isaac v. Donald*, 211 F. App'x 859, 862 (11th Cir. 2006). McLemore alleged in the grievance form that Bynes told him to wait until he returned to the Jail before filing a grievance and that she failed to provide him with the appropriate form when he returned to the Jail. Thus, even without considering McLemore's alleged conversation with Reeves, McLemore has presented evidence of good cause.

⁴The parties have not addressed what other administrative avenues—such as an appeal of the denied grievance—may have been available to McLemore at the Jail. Defendants have not asserted in their summary judgment motions that McLemore failed to pursue any such appeal, and thus the Court has not considered that issue. This matter may be raised at trial.

⁵The Court has discretion, in light of the circumstances of the particular case at hand, to determine in which order to address the issues of whether the officer committed a constitutional violation and whether that right was clearly established at the time of the incident. *Case*, 555 F.3d at 1325.

"The relevant query is whether it `would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Maiorano v. Santiago*, No. 6:05-cv-107-Orl-19KRS, 2005 WL 1200882, at *7 (M.D. Fla. May 19, 2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2002)). Further, the plaintiff must demonstrate that the right was clearly established by pointing to decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state—in this case, the Supreme Court of Florida—that provide clear notice of the violation. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000); *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). If the plaintiff does not prove both the second and third prongs, the officer is entitled to qualified immunity and, thus, summary judgment as a matter of law. *Case*, 555 F.3d at 1327.[6]

1. *Defendants Caruso, Escobales, and Mejia*

The claims against Caruso, Escobales, and Mejia fail for two reasons. First, there is no evidence that any of these officers engaged in any act or omission—let alone a constitutional violation that caused McLemore harm—and second, there is no evidence establishing that McLemore's injuries were connected to the conduct of these Defendants. The test for whether a claim of excessive force is constitutionally actionable is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and

---

[6]McLemore has not specifically indicated whether Defendants are being sued in their official or individual capacities. Nevertheless, the Court finds that Defendants are entitled to summary judgment on any official capacity claims because McLemore has not come forward with any evidence that the governmental entity that Defendants represent had a custom or policy that resulted in the wrongs asserted in the complaint. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The relevant factors for a court to consider are: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id*. at 321.[7]

McLemore's allegations against these Defendants involve their failure to "stop the assault" or "protect" him from harm. *See* Third Am. Compl. at 12. "[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). There is an affirmative constitutional duty to stop other officers from using unconstitutionally excessive force. *Id*. Nevertheless, McLemore's deposition testimony is fatal to his claims against Escobales, Mejia, and Caruso. In the deposition, McLemore testified that he was not injured while mock wrestling with his cellmate and that his injuries occurred solely as a result of Cruz throwing him to the floor. *See* McLemore Dep. at 77. Thus, he seeks no relief stemming from the forced "fight."[8]

---

[7]It is not clear whether on the day of the incident McLemore was a pretrial detainee or actually in custody. McLemore stated in his deposition that he had been sentenced on May 17, 2008, to "a year's sentence in the Department of Corrections." *See* McLemore Dep. at 98. In any event, "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause," and the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment, which applies to claims for convicted prisoners, is the same. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir.1996).

[8]Moreover, McLemore specifically acknowledged that he and his cellmate did not fight; "it was just a mock wrestling match trying to appease Mr. Cruz." McLemore Dep.

10

McLemore also testified that he did not "expect [Cruz] to physically assault [him]" and that he was surprised that Cruz did so. *Id*. at 100. The incident "took only moments . . . to occur"; McLemore described the incident as happening "very, very quickly." *Id*. at 78, 102. Further, once Cruz slammed him to the ground, Cruz did not do anything else to him. *Id*. at 102. McLemore did not "need help" after the incident, though he did have difficulty getting up because he had "gained a bit of weight." *Id*. at 104. Other than being a "little short of breath," McLemore did not have any other pains in his body right after the incident. *Id*. His cellmate helped him back to his cell. *Id*. at 103.

Additionally, in his deposition McLemore acknowledged that Caruso could not have actually prevented the incident. *Id*. at 78. McLemore also testified that Escobales was approximately five feet away when the incident occurred, and that Mejia and Caruso were seated at a desk, approximately ten feet away, at the time. *Id*. at 100-01.

Accepting as true McLemore's own testimony, McLemore has not presented evidence of a constitutional violation by these Defendants. He acknowledged that the incident occurred "very, very quickly"; that the incident was unexpected and surprising; and that these Defendants were not in immediate proximity to him and Cruz when the incident occurred. These Defendants simply did not have a realistic opportunity to intervene and prevent the harm. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010) (a state actor may be held liable for failing to prevent another state actor from committing a constitutional violation if, among other matters, the officer had a realistic

---

at 99.

11

opportunity to intervene and prevent the harm). Given the brief and unexpected nature of the incident, these Defendants lacked reasonable opportunity to stop the alleged violation. *Parker v. Fogg*, No. 85-CV-177, 1994 WL 49696, at *8 (N.D.N.Y. Feb. 17, 1994) (holding that an officer is not liable for failure to intervene when there was no realistic opportunity to prevent an attack ending in a matter of seconds). For these reasons, these Defendants are entitled to qualified immunity, and their motion for summary judgment is granted.

### 2. *Defendant Cruz*

In contrast to the claim against the other Defendants, however, substantial issues of fact remain regarding McLemore's claim of excessive force against Cruz. Slamming McLemore to the Jail floor, causing injury without provocation or justification constitutes excessive force in violation of the Eighth or Fourteenth Amendments. Although McLemore is unable to explain the mechanics of his injuries, he has presented evidence that he suffered sixth cranial nerve damage that causes dizziness, headaches, double vision, impaired depth perception, clinical depression, and an anxiety disorder. McLemore Dep. at 28. He attributes all of his injuries to the attack by Cruz. *Id*. at 27.[9] Consequently, the motion for summary judgment with respect to the excessive force claim against Cruz is denied.

## IV. Conclusion

---

[9]McLemore did acknowledge in his deposition that he had previously suffered from "TIAs" (a form of stroke), which caused symptoms "mirroring the symptoms he was now experiencing," including lightheadedness, dizzy spells, and double vision. McLemore Dep. at 22-23. In fact, he had numerous instances of double vision prior to May 17, 2008. *Id*. at 115. Nevertheless, in his summary judgment papers Cruz failed to delve into the specifics of McLemore's treatments and diagnoses.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion for Summary Judgment filed by Defendant Mark Caruso (Doc. No. 142) is **GRANTED**. Defendant Caruso is entitled to summary judgment as a matter of law on Plaintiff's claims.

2. The Motion for Summary Judgment filed by Defendants Samuel Cruz, Luis Escobales, and Erick Mejia (Doc. No. 143) is **GRANTED** in part and **DENIED** in part. The motion is **granted** as to Defendants Escobales and Mejia, and Defendants Escobales and Mejia are entitled to summary judgment as a matter of law on Plaintiff's claims. The motion is **denied** as to Defendant Cruz. McLemore's excessive force claim against Defendant Cruz will proceed to trial.

**DONE AND ORDERED** in Orlando, Florida, this 20th day of March, 2013.

Copies to:
OrlP-2 3/20
Robert Allen McLemore
Counsel of Record

JOHN ANTOON II
United States District Judge